The STATE of Ohio, Appellee,

v.

BENSON, Appellant.*

[Cite as *State v. Benson,* 152 Ohio App.3d 495, 2003-Ohio-1944.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020460.

Decided April 18, 2003.

---

* Reporter's Note:  The court sua sponte removed this case from the accelerated calendar.

Julia L. McNeil, City Solicitor, Ernest F. McAdams, City Prosecutor, and J. Phenise Poole, Assistant City Prosecutor, for appellee.

McIntosh & McIntosh and A. Brian McIntosh, for appellant.

Per Curiam.

{¶ 1} Defendant-appellant, William Benson, appeals from a conviction for operating a vehicle while under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(1) and for disregarding a traffic-control device in violation of Cincinnati Municipal Code 502.19. For the following reasons, we reverse the judgment and vacate the convictions.

{¶ 2} On January 5, 2002, Officer Michael Bell stopped Benson after observing Benson turn right at a red light where there was a posted no-turn-on-red sign. After allegedly refusing to take any field sobriety test and refusing to take an intoxilyzer test at the police station, Benson was charged with DUI in violation

of R.C. 4511.19(A)(1), which states that no one shall operate a motor vehicle if "[t]he person is under the influence of alcohol * * *."

{¶ 3} Benson filed a demand for discovery, and the state responded, but no videotape from the officer's car was produced. On February 8, 2002, Benson filed a motion to disclose any videotape recording in which he was pictured, including videos from the patrol cruiser, police station, or jail, and he filed a motion to preserve any audio-or videotape of the stop. It is uncontested that sometime in February, Benson was informed that no videotape existed.

{¶ 4} Thereafter, Benson apparently filed a motion to suppress challenging whether there was probable cause to arrest for DUI.[1] Benson also filed a motion in limine under Evid.R. 104 to prohibit the state from introducing evidence regarding field sobriety testing and any opinion whether Benson was "under the influence" or "impaired" at the time of his arrest.

{¶ 5} On March 12, 2002, at the hearing on the motions, it became evident that a videotape had existed. Officer Bell first testified that there was no videotape. Then he testified that his car was in fact equipped with a video camera but that he was not sure whether it was operating at the time of his encounter with Benson. Upon further questioning, Bell testified that the video camera was on but that he did not think that the field sobriety tests would have been on the tape, because he normally administered the tests to the side of his car and not within view of the video camera. He also explained that he was aware that there was a subpoena for the videotape and that he had not looked for the tape when asked to do so by the prosecutor. Following the hearing, the trial court denied the motions.

{¶ 6} On March 19, 2002, Benson filed a motion to dismiss both charges because the state had originally denied the existence of a videotape, and because after the March 12 hearing, it had become apparent that a videotape had existed and was not produced by the state. Benson argued that the tape was exculpatory because it related to the officer's roadside observations and the ultimate issue of whether he had been driving under the influence. Benson also filed an amended motion in limine.

{¶ 7} The case proceeded to a bench trial on June 14, 2002. At the trial, Officer Bell confirmed that the videotape had been destroyed earlier that year. Following the trial, the trial court overruled the motion in limine and the motion to dismiss, and Benson was found guilty of the traffic violation and the DUI charge. He was sentenced as of record.

---

1. The motion to suppress is not in the record, but it was argued in full at a hearing on March 12, 2002.

{¶ 8} Before addressing Benson's assignments of error, we note that Benson has filed an appeal from both the traffic violation and the DUI. But, because his assignments of error relate only to the DUI charge and in no way implicate the traffic violation that led to the initial stop, we conclude that he has abandoned his appeal on the traffic-violation charge. Accordingly, our decision does not affect the conviction for the traffic violation.

{¶ 9} In his first assignment of error, Benson contends that the trial court erred in overruling his motion to dismiss. Under this assignment, Benson argues that his due-process rights were violated by the state's failure to preserve materially exculpatory evidence.

{¶ 10} A defendant has a constitutional guarantee to access to evidence. The state's failure to preserve materially exculpatory evidence or its destruction of potentially useful evidence violates a defendant's due-process rights under the Fourteenth Amendment to the United States Constitution.[2] Evidence is materially exculpatory where "(1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means."[3] Even if the evidence is not materially useful, the failure to preserve evidence that is potentially useful violates a defendant's due-process rights where the police or the prosecution acts in bad faith.[4]

{¶ 11} Typically, the defendant bears the burden to prove that the evidence was materially exculpatory.[5] But where the defendant moves to have the evidence preserved and the state destroys the evidence, the burden shifts to the state to show the inculpatory value of the evidence.[6] In this case, it is uncontroverted that the state failed to preserve the evidence despite Benson's specific request; thus, the burden shifted to the state to demonstrate that the tape was not materially exculpatory.

{¶ 12} The state argues that, even though the tape was not preserved, it was not materially exculpatory because the field sobriety testing was not recorded on

---

2. See *California v. Trombetta* (1984), 467 U.S. 479, 488–489, 104 S.Ct. 2528, 81 L.Ed.2d 413; *Arizona v. Youngblood* (1988), 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281; *State v. Benton* (2000), 136 Ohio App.3d 801, 805, 737 N.E.2d 1046; *State v. Lewis* (1990), 70 Ohio App.3d 624, 633–634, 591 N.E.2d 854.

3. *State v. Benton*, supra, 136 Ohio St.3d at 805, 737 N.E.2d 1046.

4. See *State v. Lewis*, supra, 70 Ohio St.3d at 634, 591 N.E.2d 854.

5. See *State v. Jackson* (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549.

6. See *State v. Benton*, supra, 136 Ohio St.3d at 805, 737 N.E.2d 1046, citing *Columbus v. Forest* (1987), 36 Ohio App.3d 169, 522 N.E.2d 52.

it. Despite the state's arguments, it is possible that the tape was materially exculpatory. The testimony of Benson and his two eyewitnesses disputed much of the testimony that the officer gave at the suppression hearing and again at trial relating to the stop and the DUI charge. In our view, the tape would have provided the only possible objective evidence of the events on the night Benson was stopped. Further, the evidence was unique and not obtainable by other means.

{¶ 13} The problem here is the fact that the officer made the determination that the evidence was not material. So even if we were to determine that the evidence was only potentially useful, we cannot escape the question of whether the state acted in good faith.

{¶ 14} Bad faith implies something more than bad judgment or negligence: " 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' "[7] It is clear that the officer was dishonest with the prosecution about whether a tape actually existed, and even at the suppression hearing, it was difficult to pin down his answer about whether a tape actually existed. In the end, the officer surmised that, even if the tape had existed, it probably did not contain evidence of the field sobriety testing. In our view, the officer acted in bad faith by not turning over the tape to the prosecution and by subsequently destroying it.

{¶ 15} As a result, we hold that Benson's due-process rights were violated when the state destroyed the evidence that he had specifically requested. The first assignment of error is sustained.

{¶ 16} In his second assignment, Benson challenges the trial court's decision not to preclude the officer from giving an opinion as to sobriety. This assignment is moot based on our disposition of the first assignment of error.

{¶ 17} The judgment of the trial court is reversed in part, and Benson is discharged from further prosecution on the DUI charge. With respect to the traffic violation, the trial court's judgment is affirmed.

Judgment affirmed in part,
reversed in part
and appellant discharged.

SUNDERMANN, P.J., GORMAN and WINKLER, JJ., concur.

---

7. See *State v. Buhrman* (Sept. 12, 1997), 2d Dist. No. 96 CA 145, 1997 WL 566154, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, overruled on other grounds in *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397.