**The STATE of Ohio**

v.

**WILLIAMS.**

2003-Ohio-7294.]

Warren Municipal Court,
Trumbull County, Ohio.

No. 2003 TRC 2137.

Decided Nov. 4, 2003.

48

Traci Timko–Rose, Warren Assistant Law Director, for plaintiff.

Michael Rossi, for defendant.

---

THOMAS P. GYSEGEM, Judge.

{¶ 1} This matter came on for hearing on October 23, 2003, pursuant to defendant James D. Williams's motion to dismiss. Defendant was present and represented by Michael Rossi, and Warren Assistant Law Director Traci Timko–Rose represented the state. No testimony was taken.

{¶ 2} On March 10, 2003, defendant was driving his 1987 Chevrolet station wagon. Trooper G. Allen of the Ohio State Highway Patrol was running radar that day on State Rte. 45 in Champion Township. He initiated a stop with defendant after he had clocked him going 76 mph in a 45 mph zone. Upon stopping the vehicle, the officer noted that defendant's speech was slow and slurred, his eyes were glassy, and a moderate odor of alcohol was about his person. Defendant denied drinking but admitted to taking pain-pill medication. Defendant was given field sobriety tests, which he failed. *He refused both urine and breath tests and was released to his wife.*

{¶ 3} Defendant was charged with violations of R.C. 4511.19(A)(1) (Driving Under the Influence) and R.C. 4511.21(C) (Speeding).

{¶ 4} Defendant filed a motion to suppress on June 16, 2003, which was subsequently withdrawn August 11, at which time the instant motion to dismiss

was filed. The state filed its response thereto on October 16. Defendant's reply motion was filed October 21.

{¶ 5} The crux of defendant's argument concerned a videotape of defendant's stop and field tests at the time of his arrest. Defendant learned of the existence of this tape at a May 1, 2003 pretrial and demanded to inspect the tape. Based on assurances from the Ohio State Highway Patrol to the prosecutor, defendant waited for his opportunity to inspect. On August 18, 2003, after the Highway Patrol failed to respond, defendant issued a subpoena duces tecum for the tape. To this date, the subpoena in question has not been officially answered. Rather, on August 21, presumably in response to the subpoena, the Ohio State Highway Patrol issued a memorandum (State's Exhibit A) to the court that explained that the tape in question was "mechanically destroyed five days after the date of arrest by the in-car video system."

{¶ 6} Due process guarantees fundamental fairness in the trial of a criminal defendant. *Lisenba v. California* (1941), 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166. Although the guarantee of a fair trial does not mean an error-free or perfect trial, *United States v. Hasting* (1983), 461 U.S. 499, 508–509, 103 S.Ct. 1974, 76 L.Ed.2d 96, due process does require the state to allow the accused to present a complete defense. *California v. Trombetta* (1984), 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413.

{¶ 7} At this point, the court wishes to make two observations: First, the court in no way construes the destruction of the tape to be anything but an accident occasioned by a malfunctioning government-owned machine. Second, whatever condition the destroyed tape was in, it is undiscoverable, as the tape was never turned over to defendant's counsel, the prosecutor, or the court, and thus is presumably destroyed. Defendant argues that this failure is tantamount to "bad faith" under *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693. (See Defendant's Reply at 3.) Furthermore, defendant correctly states that the contents of the tape are of extreme materiality, as "the videotape is the most critical and only objective evidence in this case." (Defendant's Reply at 1.)

{¶ 8} As the court stated in *Columbus v. Forest* (1987), 36 Ohio App.3d 169, 172, 522 N.E.2d 52:

"Here, it is at least questionable, and probably quite likely, that the prosecution did not act in good faith. It is uncontroverted that the state failed to preserve the evidence despite defendant's specific request. Moreover, defendant's request was never answered. * * * We find that fundamental fairness, implicit in the federal guarantee of due process, requires, at a minimum, that the state respond to defense requests to preserve evidence. * * * [T]he state is under a

constitutional duty to respond in good faith to a defense request to preserve evidence."

{¶ 9} The state argues that defendant's failure to allege an "exculpatory" nature of the tape is cause to deny defendant's motion. This court fails to see any relevance to this argument. The state, citing *State v. Sanders* (1998), 130 Ohio App.3d 789, 796, 721 N.E.2d 433, submits that it is incumbent upon defendant to establish not only that the recording was exculpatory but that the police had knowledge of the exculpatory value of the tape at the time it was destroyed.

{¶ 10} Quite simply put, it is an impossibility to prove the exculpatory or inculpatory nature of an item that is not in existence, let alone what was in "the mind of the Trooper" at the time the item was destroyed. This court rejects that decision in light of subsequent case law presented herein.

{¶ 11} The court finds here that "given the record in this case, it is equally possible that the tape would have been exculpatory as inculpatory." *State v. Benton* (2000), 136 Ohio App.3d 801, 806, 737 N.E.2d 1046.

> "Arguably, if the evidence was not exculpatory, then the state was under no duty to preserve the evidence, regardless of its moral culpability. * * * On the other hand, if the tapes contained exculpatory material, the state's failure to preserve the material infringed defendant's right to a fair trial by denying him access to that evidence. *Unfortunately, '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of material whose contents are unknown and, very often, disputed.' Trombetta, supra,* at 486 [104 S.Ct. 2528, 81 L.Ed.2d 413]." (Emphasis added.) *Columbus v. Forest,* supra, 36 Ohio App.3d at 172, 522 N.E.2d 52.

> "Proving that lost or destroyed evidence is materially exculpatory is a daunting burden, one that has generally been placed with the defendant. * * * [*Id.* at 173] [522 N.E.2d 52]. The Tenth District Ohio Court of Appeals, however, has shifted the burden away from the defendant in limited circumstances. * * * According to the court in *Forest,* where a defendant moves to have evidence preserved and that evidence is nonetheless destroyed by the state in accordance with its normal procedures, the appropriate remedy is to shift the burden to the state to show that the evidence was not exculpatory. [*Id.*] However, if the [state] fails to carry this burden, the defendant must still show that the evidence could not have been obtained by other reasonable means. *Id.* We find this approach reasonable and we are persuaded by the court's reasoning." *Benton,* supra, 136 Ohio App.3d at 805–806, 737 N.E.2d 1046.

{¶ 12} This court finds the *Benton* rationale, as supported by the Sixth and Tenth Appellate Districts, all the more compelling in this case, as the tape in

question was destroyed by the state *not in accordance with its normal procedures.*

"We also note that appellant specifically requested discovery of the tape, and the state did not in good faith respond to that request. Applying *Forest,* we therefore hold that the state has the burden of showing that the tape was not exculpatory. The state has not met this burden. Given the record in this case, it is equally possible that the tape would have been exculpatory as inculpatory. We also hold that the evidence is unique and not obtainable by other means. Because appellant testified that he disputes much of the testimony that the officer gave at the suppression hearing, the tape would have provided the only possible objective evidence of the events as they happened on the night that appellant was stopped. Accordingly, we hold that appellant's due process rights were violated when the state destroyed the evidence that appellant specifically requested." Id. at 806, 737 N.E.2d 1046.

{¶ 13} The facts of this case bear a remarkable similarity to those in *Benton.* This court so finds, as did the *Benton* court, and the *Forest* court, that the state did not in good faith respond to defendant's requests. Although no testimony was taken in the record, the simple fact remains, and this court so finds from the pleadings and arguments of counsel, unlike the situation in *Forest,* supra, 36 Ohio App.3d at 173, 522 N.E.2d 52, that the evidentiary value of the tape is objectively unique and is not obtainable by other means.[1]

{¶ 14} The state relies on *Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281, which held:

"[T]hat unless a criminal defendant can show bad faith on the part of the police, failure to preserve *potentially useful evidence* does not constitute a denial of due process of law." (Emphasis added.)

"Although *Youngblood* dealt with a situation where the prosecutor failed to preserve evidence, as opposed to *Brady v. Maryland* (1962), 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215], and *State v. Johnston* (1988), 39 Ohio St.3d 48 [529 N.E.2d 898], both of which dealt with suppression of evidence, the Supreme Court's reliance on *Brady* would seem to indicate that the same standards are to apply in either situation. The critical importance of *Youngblood* is that it differentiates, for purposes of due process analysis, between 'material exculpatory' evidence and 'potentially useful' evidence. Thus, if the prosecution suppresses, or fails to preserve *materially exculpatory* evidence, then a criminal defendant's due process rights have been violated. However, the

---

1. The court specifically notes that no breath or other independent objective scientific tests were conducted herein.

suppression or failure to preserve *potentially useful* evidence violates constitutional due process only upon a showing of bad faith. * * *

"Under *Brady,* suppression of material exculpatory evidence by the prosecution is a denial of due process of law. Similarly, by exempting the loss of potentially useful evidence from the *Brady* holding, the decision in *Youngblood* implies that the *loss* of material exculpatory evidence by the prosecution is also a denial of due process.

"Therefore, the pivotal inquiry is whether that evidence suppressed, or lost, by the state in the cause *sub judice* was materially exculpatory and, if not, was it suppressed or lost in bad faith. * * *

"[As well,] the *Youngblood* decision did not expound upon constitutional materiality, see *id.,* 488 U.S. at 67–71 [109 S.Ct. 333, 102 L.Ed.2d 281] (Blackmun, J., dissenting), and thus we are controlled by the standard set forth in *Johnston, supra,* at paragraph five of the syllabus (citing *United States v. Bagley* [1985], 473 U.S. 667 [105 S.Ct. 3375, 87 L.Ed.2d 481]) as follows:

" '[E]vidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense.' " *State v. Lewis* (1990), 70 Ohio App.3d 624, 634–635, 591 N.E.2d 854.

█ {¶ 15} With respect to the materiality prong, the Supreme Court of the United States more recently stated in *Kyles v. Whitley* (1995), 514 U.S. 419, 428, 115 S.Ct. 1555, 131 L.Ed.2d 490:

"*Bagley*'s [*United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481] touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.' *Bagley* 473 U.S. [667] at 678 [105 S.Ct. 3375, 87 L.Ed.2d 481]." See, also, *State v. Smith* (Dec. 5, 1997), Trumbull App. Nos. 96–T–5595 and 96–T–5596, at 9, 1997 WL 772938.

{¶ 16} As heretofore noted, the tape in question is equally inculpatory as exculpatory. The court is called upon to make a finding upon this issue, and due to the ambiguity that exists due to the state's failure to produce, this ambiguity

must be resolved in favor of defendant. Thus, the court finds that the videotape in question is materially exculpatory.

{¶ 17} In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, the Supreme Court of the United States held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. In *State v. Aldridge* (1997), 120 Ohio App.3d 122, 145, 697 N.E.2d 228, the court stated:

"[I]n order to establish a violation, the petitioner must demonstrate three elements: first, that the prosecution failed to disclose evidence upon request; second, that the evidence was favorable to the defense; and third, that the evidence was material. * * * Both exculpatory and impeachment evidence is 'material.' " *Bagley*, supra, 473 U.S. at 667, 105 S.Ct. 3375, 87 L.Ed.2d 481.

{¶ 18} Although this matter has not gone to trial, it is well settled that the law does not require the doing of a useless act.[2]

{¶ 19} Furthermore, had this court found the videotape in question to be merely "potentially useful evidence," the bad faith (as found in this case above) evidenced by the state would have been sufficient under *Brady* to be violative of constitutional due process.

{¶ 20} The court in this case finds contra *Trombetta, Youngblood,* and *Lewis,* supra, that where the state voluntarily and of its own volition manufactures or creates material exculpatory evidence, it is under a duty of strict liability to produce such upon demand irregardless of bad faith. See *Benson,* supra, 152 Ohio App.3d at 498, 788 N.E.2d 693. "[T]he right of an accused to have evidence preserved is limited by the Constitution to evidence which is apparently exculpatory and unique." *Forest,* supra, 36 Ohio App.3d at 173, 522 N.E.2d 52. In essence, the net result of the court's decision is to hold the state to the status of an insurer respecting the preservation of this evidence.[3] Malfeasance or misfeasance in this regard (see *Benson* and *Benton*) as opposed to nonfeasance (see *Trombetta, Youngblood,* and *Lewis*) undermines the fundamental fairness of the proceedings in violation of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and analogous Section 16, Article I of the Ohio Constitution.

---

2. This court finds that had this matter gone to trial without the videotape and had the defendant been acquitted, the proceedings would have been concluded. Conversely, had the defendant been convicted, the absence of the videotape would have sufficiently undermined confidence in the outcome. See *Forest,* supra, 36 Ohio App.3d at 172, 522 N.E.2d 52.

3. That being evidence that is material, exculpatory, state-created, and otherwise not available from any other alternative source.

{¶ 21} Motion to dismiss is HEREBY GRANTED, and DEFENDANT IS ORDERED DISCHARGED.

Motion to dismiss granted.