DECISION.
{¶ 1} On March 7, 2003, Marcus Shearer had just gotten out of his car when he saw a group of five men on the street. The men approached him with guns drawn. One man punched him in the chin, another man, defendant-appellant London Sanders, hit him in the face with a gun, and a third man shot him in the stomach. When Shearer ran, more shots were fired at him, several of which struck him on his hip and arm. A man who was driving by helped Shearer into his truck and drove him to the hospital. The attack happened at about 6:30 p.m., when it was still light outside. Shearer was able to identify his assailants, including Sanders.
 {¶ 2} Sanders was subsequently charged with two counts of felonious assault in violation of R.C. 2903.11(A)(1) and2903.11(A)(2). Each of the charges carried gun specifications. After a trial to a jury, Sanders was convicted of the two counts of felonious assault, but was acquitted of the accompanying gun specifications. Sanders now appeals, raising eight assignments of error. Because we find none of the assignments to be well taken, we affirm.
 {¶ 3} In his first assignment of error, Sanders argues that the trial court erred by failing to provide him with access to the presentence report of a co-defendant, Tyrone Browner, during pretrial discovery.
 {¶ 4} Under Ohio law, access to presentence reports is limited because of the need to protect the confidential information contained within them.[1] R.C. 2951.03(D)(1) provides that the only courts authorized to see a presentence report are the sentencing court for which the report has been prepared and the appellate court reviewing the case. A trial court does not even have to allow a defendant to see the presentence report in his own case.[2] Because the presentence report at issue in this case was not a part of Sanders's prosecution, and because Sanders had no right to the report under R.C. 2951.03, we overrule his first assignment of error.
 {¶ 5} In his second assignment of error, Sanders contends that the trial court erred in overruling his motion to suppress his statement to police regarding his involvement in Shearer's assault. Sanders contends that, at the time he made the statement, he had not been properly advised under Miranda v.Arizona.[3]
 {¶ 6} When considering a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility.[4] While we must accept the trial court's findings of fact if they are supported by competent, credible evidence, we engage in a de novo review of whether the facts meet the appropriate legal standard.[5]
 {¶ 7} During the hearing on Sanders's motion to suppress, the arresting officer testified that he had approached Sanders, told Sanders that he was under arrest, and verbally informed Sanders of his Miranda rights. The officer further testified that Sanders had then stated that he had been at the scene of the shooting, but that he had had nothing to do with it. Sanders, on the other hand, testified that the arresting officer had never read him his Miranda rights, and that he had never made a statement to the police. The trial court, as the trier of fact, found the arresting officer's testimony to be more credible and overruled the motion. Because there was competent, credible evidence supporting the trial court's finding that Sanders had been informed of his Miranda rights prior to making his statement, we overrule his second assignment of error.
 {¶ 8} In his third assignment of error, Sanders claims that the trial court erred when it allowed a previously convicted co-defendant, Tyrone Browner, to take the stand and then to assert his privilege against self-incrimination. Sanders contends that Browner's testimony had no probative value and was prejudicial to him because it created an inference of guilt by association.
 {¶ 9} During the trial, Sanders's only concern was that Browner would testify about an earlier statement in which he had implicated Sanders. And Sanders expected that Browner would invoke his Fifth Amendment rights during cross-examination. Sanders's current argument was never raised below, so he has waived all but plain error. In order to prevail under a plain-error analysis, Sanders must show that the outcome of the trial would have been different but for the alleged error.[6]
 {¶ 10} The record reveals that the trial court, the state, and defense counsel discussed Browner's testimony prior to the state calling him to the stand. The trial court had also summoned Browner's attorney to discuss his client's testimony. Browner's attorney told the court that his client wished to give truthful and honest testimony. At that point, the state believed, based on the representations of Browner's attorney, that Browner would be testifying. But when the state called Browner to testify, he changed his mind and refused to answer any questions relevant to Sanders's case. Considering that Browner never answered a single question that had any relevance to the trial, we conclude that there was nothing prejudicial before the jury connecting Browner to Sanders. Consequently, we cannot say that the trial court committed plain error in letting Browner take the stand. We, therefore, overrule Sanders's third assignment of error.
 {¶ 11} In his fourth assignment of error, Sanders claims that his due-process rights were violated when the state failed to preserve materially exculpatory evidence. Sanders argues that the trial court should have dismissed the charges against him, declared a mistrial, or at least precluded the state's witness, Raymond Green, from testifying after the state failed to provide Green's prior taped statement to the defense, and it was discovered that the tape was lost.
 {¶ 12} In State v. Benson, this court held that "[t]he state's failure to preserve materially exculpatory evidence or its destruction of potentially useful evidence violates a defendant's due-process rights under theFourteenth Amendment to the United States Constitution."[7] We explained that "[e]vidence is materially exculpatory where `(1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means.'" We further stated that "[e]ven if the evidence is not materially useful, the failure to preserve evidence that is potentially useful violates a defendant's due-process rights where the police or the prosecution acts in bad faith."[8] Thus, we concluded that when a defendant requests evidence and the state fails to respond in good faith to the defendant's request, the state bears the burden of proving that the evidence is not exculpatory.[9]
 {¶ 13} We have reviewed the record in this case, and there is nothing to show that the tape of Green's statement contained any exculpatory evidence. On the contrary, there was testimony that the tape in question was consistent with the testimony given by the witness during the trial, and at best the tape could have been used only for impeachment purposes. There was also nothing to show that there was any bad faith by the state in the loss of the tape. Thus, the trial court committed no error. We, therefore, overrule the fourth assignment of error.
 {¶ 14} In his fifth and sixth assignments of error, Sanders contends that inconsistencies in the jury's verdicts rendered his convictions against both the weight and the sufficiency of the evidence. Sanders argues that the jury must have lost its way when it found him guilty of the two counts of felonious assault, but not of the accompanying gun specifications.
 {¶ 15} In reviewing a claim that a verdict is against the manifest weight of the evidence, we must review the entire record and determine if the trier of fact clearly lost its way and created a manifest miscarriage of justice.[10] The weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact.[11] When reviewing a claim that a conviction is not supported by sufficient evidence, this court must determine whether the evidence presented at trial, when viewed in the light most favorable to the prosecution, would have allowed a rational trier of fact to find that the essential elements of the crime had been proved beyond a reasonable doubt.[12]
 {¶ 16} Sanders was convicted of two counts of felonious assault, which is defined in R.C. 2903.11(A)(1) and (2) as "caus[ing] serious physical harm to another * * * [or] caus[ing] physical harm to another * * * by means of a deadly weapon."
 {¶ 17} Having reviewed the record, we conclude that there was sufficient evidence supporting the felonious-assault convictions, and that the jury did not lose its way in reaching a guilty verdict. In addition, we cannot say the verdicts were inconsistent.[13] Accomplices can be prosecuted and punished as if they were the principal offenders.[14] Here, the jury could have concluded from Shearer's testimony that Sanders was an accomplice to the shooting, because Sanders had struck him in the face with a gun even though the gun was never recovered. But even if we were to assume arguendo that the verdicts were inconsistent, a reversal would not be mandated. A finding on a specification that is inconsistent with a guilty finding on the principal charge will not undermine the guilty finding on the principal charge where, as here, sufficient evidence supports that guilty finding.[15]
 {¶ 18} The seventh and eighth assignments are considered together because they involve the same incident. In his seventh assignment of error, Sanders contends that the trial court should have declared a mistrial after two jurors walked by him in the hallway and saw him in handcuffs. In his eighth assignment of error, Sanders argues that his attorney was ineffective when he failed to move for a mistrial.
 {¶ 19} Mistrials need only be declared when a fair trial is no longer possible.[16] It is within the trial court's discretion whether to grant a motion for a mistrial.[17]
Thus, we review the trial court's decision under an abuse-of-discretion standard.[18]
 {¶ 20} Here, the trial court questioned the two jurors in chambers. Both jurors stated that seeing the defendant in handcuffs would not influence them. Moreover, the Ohio Supreme Court has held that when a juror's view of a defendant in restraints is brief, inadvertent, and outside the courtroom, the danger of prejudice is slight.[19] Given these facts and the relevant law, we cannot say that the trial court abused its discretion in not declaring a mistrial. Moreover, because there was no prejudice to Sanders, Sanders's counsel was not deficient in failing to move for a mistrial following the incident. We, therefore, overrule Sanders's seventh and eighth assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
Doan, P.J., and Hildebrandt, J. concur.
[1] R.C. 2951.03.
[2] R.C. 2951.03(B)(3).
[3] (1966), 384 U.S. 436, 86 S.Ct. 1602.
[4] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[5] Id.
[6] State v. Wickline (1990), 50 Ohio St.3d 114, 120,552 N.E.2d 913.
[7] 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, at ¶ 10.
[8] Id.
[9] Id. at ¶ 11.
[10] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[11] State v. DeHass (1967), 10 Ohio St.2d 230, 231,227 N.E.2d 212.
[12] State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[13] We have overruled the same argument in the appeal of co-defendants Morris Sanders and Tyrone Browner based on the same analysis employed here.
[14] State v. Coleman (1988), 37 Ohio St.3d 286,525 N.E.2d 792.
[15] State v. Boyd (1996), 110 Ohio App.3d 13, 15-17,673 N.E.2d 607.
[16] State v. Franklin (1991), 62 Ohio St.3d 118, 127,580 N.E.2d 1.
[17] State v. Sage (1987), 31 Ohio St.3d 173, 182,510 N.E.2d 343.
[18] State v. Treesh, 90 Ohio St.3d 460, 480, 2000-Ohio-4,739 N.E.2d 749.
[19] See State v. Kidder (1987), 32 Ohio St.3d 279, 285-286,513 N.E.2d 311; State v. Landrum (1990), 53 Ohio St.3d 107,118, 559 N.E.2d 710.