DECISION.
{¶ 1} Plaintiff-appellant the state of Ohio appeals the trial court's decision to dismiss a charge against defendant-appellee Robert Anderson for operating a motor vehicle with a breath-alcohol concentration in excess of the prohibited level.[1] (A companion charge of operating under the influence[2] is evidently still pending).
 {¶ 2} The state argues that the trial court misapplied the legal standard concerning the state's failure to preserve evidence — in this case, a videotape from the police station. The state maintains that the dismissal of a criminal charge is only appropriate when the defendant proves both (1) that the evidence was exculpatory and (2) that there was bad faith by the police or the prosecution.
 {¶ 3} Not so. When a defendant moves to have evidence preserved and the state destroys the evidence, the burden shifts to the state to show the inculpatory value of the evidence. Because the state was not able to do so in this case, the trial court was correct in dismissing the charge of operating a motor vehicle in excess of the prohibited breath-alcohol level. The trial court indeed applied precisely the correct legal standard. We affirm.
 I. The Case of the Taped-Over Videotape {¶ 4} On October 31, 2004, Anderson was arrested by Woodlawn Police Officer Rowland after being observed leaving a bar's parking lot and crashing into a street sign. Officer Rowland administered a field sobriety test. When Anderson failed the test, he was transported to the Evendale Police Department for an intoxilyzer test because Woodlawn's intoxilyzer was broken.
 {¶ 5} Upon arriving at the Evendale Police Department, Anderson was led from the cruiser, through a sally port, and into the intoxilyzer room. At a suppression hearing, Officer Rowland testified that he and Evendale Police Officer Vonderhaar had then observed Anderson for 20 minutes before he was asked to take a breath test. Officer Vonderhaar stated that he had observed Anderson for the 20 minutes before the breath test, but he did not mention whether Officer Rowland had been in the room. Anderson maintained in his testimony that neither officer had been present or visible during the 20-minute waiting period.
 {¶ 6} Both Officer Rowland and Officer Vonderhaar testified that Officer Vonderhaar had administered the breath test. But Anderson contradicted this testimony by claiming that Officer Rowland had administered the breath test with Officer Vonderhaar looking over Officer Rowland's shoulder. While Officer Vonderhaar was certified to administer the intoxilyzer, Officer Rowland was not.
 {¶ 7} While Anderson was at the Evendale Police Department, a security videotape recorded the intoxilyzer room, the lobby, the booking room, and the sally-port area. On November 19, Anderson made a general request for discovery; he also moved to preserve recordings either from the scene or at the station. While the state has labeled this as merely a general discovery request, Anderson specifically moved, separate from his general discovery request, to preserve any recordings.
 {¶ 8} Evendale's policy was to reuse the security tapes each month. But since November only has 30 days, this particular tape was not to be used again until December 31. The state thus had 42 days to retrieve and preserve the videotape. Yet in spite of Anderson's motion to preserve the tape, the state evidently did nothing to preserve it. Thus the recording of Anderson's entry into the station, his wait in the intoxilyzer room, and his subsequent test was taped over and destroyed.
 {¶ 9} When Anderson discovered that the recording had been destroyed, he moved to dismiss the complaint due to the state's failure to preserve the evidence. The trial court granted the motion, reasoning that the state had failed to show that the videotape had been inculpatory only. This appeal followed.
 II. Specific Motion to Preserve Shifts Burden to the State {¶ 10} A defendant has a constitutional right to access of evidence. The state's failure to preserve materially exculpatory evidence or its destruction of potentially useful evidence violates a defendant's due-process rights under theFourteenth Amendment to the United States Constitution.[3] Evidence is materially exculpatory where "(1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means."[4] Even if the evidence is not materially exculpatory, the failure to preserve evidence that is potentially useful violates a defendant's due-process rights where the police or the prosecution act in bad faith.[5]
 {¶ 11} Typically, the defendant bears the burden to prove that the evidence was materially exculpatory.[6] But where the defendant moves to have the evidence preserved, and the state destroys the evidence, the burden shifts to the state to show the solely inculpatory value of the evidence.[7] In this case, Anderson made a specific request to preserve the videotape from the police station. Thus the burden shifted to the state to demonstrate that the tape was not materially exculpatory.
 {¶ 12} The state maintains that the duty to preserve did not arise because Anderson did not prove that the security videotape was exculpatory. The state cites our decision in State v.Acosta[8] for the proposition that when a defendant makes a general motion for discovery, the burden to prove the exculpatory nature of evidence remains with the defendant. While the state correctly characterizes our holding in Acosta, it mischaracterizes Anderson's requests in this case.
 {¶ 13} When Anderson filed his general discovery request, he also filed a separate motion to preserve "any video or audio recordings at the station." This was a specific request for preservation of the evidence; the state ignored it. The present case is therefore distinguishable from Acosta and is more analogous to the facts of State v. Benson.[9]
 {¶ 14} In Benson, William Benson was stopped after turning right on red where there was a posted no-turn-on-red sign.[10] He refused to take a field sobriety test or an intoxilyzer test and was charged with driving under the influence of alcohol.[11] Benson filed a demand for discovery and also filed a motion to disclose any videotape recording from the police cruiser, the police station, or the jail.[12] But he was informed that no videotape existed.
 {¶ 15} During a probable-cause hearing, it became evident that a videotape had existed.[13] The arresting officer first testified that he was not sure if the video camera had been on. But then he recanted that testimony and said that the video camera was on, but that he was not sure if the video would have shown any field sobriety tests.[14] The officer then stated that he was aware of the subpoena for the videotape, and he subsequently confirmed at trial that he had destroyed the videotape.[15]
 {¶ 16} We held that where a defendant specifically moves to have evidence preserved, and the state destroys the evidence, the burden shifts to the state to show the solely inculpatory value of the evidence.[16] We find that this analysis is appropriate to the present case as well.
 {¶ 17} The state argues that even though the tape was not preserved, Anderson never demonstrated that the tape was materially exculpatory. Despite the state's argument, it is possible that the tape was materially exculpatory. Anderson disputed many of the facts at issue — whether anyone observed Anderson for the 20 minutes required, who actually administered the intoxilyzer test, and what was apparent from his gait and demeanor as he walked from the police cruiser, through the sally port, and into the police station. The videotape would have provided the only possible objective evidence of the events on the night Anderson was stopped. More importantly, the videotape would have constituted Anderson's only impeachment tool if the police officers testified inaccurately. Thus, the evidence was unique and not obtainable by other means.
 {¶ 18} But whether we believe the tape to have been materially exculpatory is not vital to this appeal. Once Anderson moved to have the evidence preserved and the state destroyed the evidence, the burden was on the state to show the solelyinculpatory value of the videotape. The trial court ruled that the state had failed to show that the videotape was inculpatory only. Thus the trial court applied precisely the correct standard. The state's assignment of error is overruled.
 III. Bad Faith Not Needed {¶ 19} The state seems to be under the misconception that if the state destroys evidence, the defendant must show that the evidence was exculpatory. And it seems that the state further believes that even if the evidence was demonstrably exculpatory, a defendant must also make a showing of bad faith to prove that his due-process rights were violated. Because we cannot leave this misunderstanding unaddressed, we now attempt to clarify the law.
 {¶ 20} The United States Supreme Court has stated that a defendant has a constitutionally protected privilege to request and obtain evidence that is either material to the defendant's guilt or relevant to the punishment to be imposed.[17] Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt.[18]
No one disputes this standard.
 {¶ 21} Evidence is materially exculpatory when both of the following apply: "(1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) [the evidence] is of such nature that the defendant would be unable to obtain comparable evidence by any other reasonable means."[19] If evidence is materially exculpatory, a defendant need not show bad faith by the police or the prosecution. Bad faith only enters the equation when the evidence is potentially useful, not materially exculpatory. Thus, the failure to preserve potentially useful evidence violates a defendant's due-process rights only where the police or the prosecution act in bad faith.[20]
 {¶ 22} As we have previously stated, a defendant initially bears the burden to prove that evidence is materially exculpatory.[21] But when the defendant moves to preserve evidence, and the state destroys that evidence, the burden shifts to the state to show the solely inculpatory nature of the evidence.[22] In the present case, when Anderson moved to have "any video or audio recordings at the station preserved," and the Evendale police had later taped over the recording made at the station, Anderson no longer needed to show the exculpatory nature of the recording. The burden shifted to the state to show the opposite. The trial court ruled that the state had not met that burden, and we agree.
 {¶ 23} Accordingly, we overrule the state's assignment of error and affirm the trial court's dismissal of the charge of operating a motor vehicle in excess of the prohibited level of alcohol.
Judgment affirmed.
Hildebrandt, P.J., and Doan, J., concur.
[1] R.C. 4511.19(A)(4).
[2] R.C. 4511.19(A)(1).
[3] See State v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944,788 N.E.2d 693, at ¶ 10, citing California v. Trombetta (1984),467 U.S. 479, 488-489, 104 S. Ct. 2528, Arizona v. Youngblood
(1988), 488 U.S. 51, 57-58, 109 S. Ct. 333, and State v. Benton
(2000), 136 Ohio App.3d 801, 805, 737 N.E.2d 1046.
[4] Id., citing Benton, 136 Ohio App.3d at 805,737 N.E.2d 1046.
[5] Id., citing State v. Lewis (1990), 70 Ohio App.3d 624,634, 591 N.E.2d 854.
[6] Id. at ¶ 11, citing State v. Jackson (1991),57 Ohio St.3d 29, 33, 565 N.E.2d 549.
[7] Id., citing Benton, 136 Ohio App.3d at 805,737 N.E.2d 1046, citing Columbus v. Forest (1987), 36 Ohio App. 3d 169,522 N.E.2d 52.
[8] 1st Dist. No. C-020767-71, 2003-Ohio-6503.
[9] 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693.
[10] Id. at ¶ 2.
[11] Id.
[12] Id. at ¶ 3.
[13] Id. at ¶ 5.
[14] Id.
[15] Id. at ¶ 5-7.
[16] Id. at ¶ 11.
[17] See Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194.
[18] See Trombetta, 467 U.S. at 485, 104 S.Ct. 2528, citingUnited States v. Agurs (1976), 427 U.S. 97, 112,96 S.Ct. 2392.
[19] Benson, 152 Ohio App.3d 495, 2003-Ohio-1944,788 N.E.2d 693, at ¶ 10, citing Benton, 136 Ohio App.3d at 805,737 N.E.2d 1046.
[20] Id., citing Lewis, 70 Ohio App.3d at 634,591 N.E.2d 854.
[21] Id. at ¶ 11, citing Jackson, 57 Ohio St.3d at 33,565 N.E.2d 549.
[22] Id., citing Benton, 136 Ohio App.3d at 805,737 N.E.2d 1046, citing Columbus v. Forest (1987), 36 Ohio App.3d 169,522 N.E.2d 52.