The STATE of Ohio, Plaintiff,

v.

SHURELDS, Defendant.

2010-Ohio-1660.]

Court of Common Pleas of Ohio,
Allen County.

No. CR2009 0236.

Decided Feb. 17, 2010.

Juergen Waldick, Allen County Prosecuting Attorney, and M. Daniel Berry, Assistant Prosecuting Attorney, for plaintiff.

Kenneth Rexford, for defendant.

REED, Judge.

{¶ 1} This matter comes on for consideration of the defendant's motion to dismiss filed on October 29, 2009, the supplemental briefing filed by defendant on November 12, 2009, the evidence presented at the hearing on this matter on January 11, 2010, and February 11, 2010, and the written closing arguments of the state and defendant filed on February 12, 2010, and February 16, 2010. Defendant was present at all hearings.

{¶ 2} This case presents the following question: Are a defendant's due process rights violated to the extent that dismissal is warranted when a cruiser videotape is taped over, thus destroying evidence contained on the tape pertaining to the offense for which defendant is later indicted, *after* the defendant made a specific request of law-enforcement personnel to preserve the videotape and when there

is no evidence that law-enforcement personnel acted in bad faith but were, at most, *negligent* in the manner in which they handled the tape? For the following reasons, and limited to the peculiar facts in this case, this court answers yes to that question.

{¶ 3} The basic facts are as follows:

{¶ 4} Patrolman Scott Jones was working routine patrol for the Lima Police Department on the third shift on July 9, 2009, through July 10, 2009. The cruiser to which he was assigned was equipped with a videotape camera and recording equipment ("cruiser cam"). Apparently the recording equipment included a microphone on the person of the patrolman, which could record sound wherever the patrolman went. According to the daily videotape log for Jones's shift, Jones was assigned tape number 05–023 on the date in question. He put the tape into his cruiser cam and started his shift, with the camera and microphone recording the activities of his night.

{¶ 5} At around 3:00 a.m. on July 10, 2009, Jones stopped a vehicle for a traffic violation.[1] Defendant was a passenger in that vehicle. Other officers responded as backup for Jones. Patrolman Bryan Snyder found a gun underneath the passenger seat in the car. Because Jones told Detective Steve Stechschulte that defendant made a statement to put the gun violation on him, defendant was charged with having a weapon while under a disability. Defendant denied making the inculpatory statement. Stechschulte testified that but for the alleged statement, defendant would not have been charged at that time.

{¶ 6} The state stipulated that defendant's attorney sent a letter, dated July 13, 2009, to the prosecutor's office specifically requesting preservation of certain evidentiary items, including "[a]ny and all recordings, whether audio or video, of any law enforcement activities related to" the defendant's case. Lima Police Chief Greg Garlock testified that he recalled receiving similar notification from defendant's attorney and remembered referring the matter to Major Tony Swygart, who was in charge of administrative services at the police department.

{¶ 7} The fact of the matter is that tape number 05–023 was not preserved and was recycled; that is, it was put back into circulation and reused by other officers *after* defendant had made the request for preservation. The circumstances of how the videotape was handled and how the tape was reused present the mystery in this case. No one was able to say for certain what had happened, but this court finds that there was no evidence that the tape was purposely taped over to destroy the alleged evidence of defendant's statement to Jones.

---

1. The stop of the vehicle was the subject of a motion to suppress that this court has already overruled by an entry filed on December 1, 2009.

{¶ 8} Jones said he did not recall what he did with videotape number 05–023 after his shift. He also testified that he did not consider the videotape worth preserving. Jones did put other items related to this case into the evidence cabinet after his shift, including a gun, alleged marijuana, and a knife. Cruiser cam tapes are supposed to be deposited in a bin after each shift. Debbie Caprella, a records clerk at the police department, whose job it was to account for the tapes after each shift, testified that the daily tape log showed that Jones's tape (number 05–023) was not among the tapes she accounted for on July 10, 2009, after Jones's shift, and must have been in the evidence cabinet because the log for that shift shows that particular tape was marked "Evid." No one knows who marked "Evid" on the daily tape log. Jones said he did not. Swygart testified that he did not know why the tape was not in the bin after Jones's shift. Detective Stechschulte did not know what had happened to the tape but thought either Jones had not put it in the proper bin or Caprella had missed it. The tape number reappeared on the log for July 12, 2009, and the actual tape was apparently put back into the rotation to be used again. The evidence shows that that tape was actually taped over on August 15, 2009, 32 days after defendant requested preservation of the tape.

{¶ 9} There was a lot of testimony regarding the handling of the tape, and after the hearing, all that is known for sure is that the tape was reused, and the recording from Jones's shift on July 9 and 10, 2009, was taped over and is not available. Tape number 05–023 was not preserved even though defendant's attorney made a request on July 13, 2009, that it be preserved. The video recordings from the cruiser cams within the other three responding cruisers were preserved. There is absolutely no evidence that anyone deliberately or intentionally destroyed the tape.

{¶ 10} Only Jones testified that defendant had made a statement about the gun. None had of the other responding officers overheard defendant say anything about the gun. Defendant wants this court to dismiss this case because the videotape recording, ostensibly containing the statement that Jones attributed to defendant to put the gun violation on him, was not preserved, despite the specific defense request that it be preserved.

{¶ 11} To determine whether a defendant's due process rights are violated, courts characterize lost or destroyed evidence as (1) materially exculpatory or (2) potentially useful. See *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1. "The Due Process Clause protects a defendant from being convicted of a crime where the state has failed to preserve materially exculpatory evidence or has destroyed, in bad faith, potentially useful evidence." *State v. Sneed*, Lawrence App. No. 06CA18, 2007-Ohio-853, 2007 WL 613704, at ¶ 20. "The suppression by the prosecution of evidence favorable to an accused violates

due process where the evidence is *material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Emphasis added.) *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph four of the syllabus, following *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

{¶ 12} Therefore, the first task is to ascertain the *type* of evidence that is at issue in this case, and determine whether it fits into the category of exculpatory evidence or whether it can be considered only potentially useful evidence.

{¶ 13} *Geeslin* provides valuable guidance in this case. The Third District Court of Appeals first decided in *State v. Geeslin*, Mercer App. No. 10–05–06, 2006-Ohio-1261, 2006 WL 687519, that missing videotape evidence was not merely potentially useful, because the videotape was not something that "could have been subjected to tests, the results of which might have exonerated the defendant." Id. at ¶ 16, citing *Arizona v. Youngblood* (1988), 488 U.S. at 57, 109 S.Ct. 333, 102 L.Ed.2d 281. It was the tape itself, reasoned the court of appeals, or rather, what the tape showed, that would have either exculpated or inculpated Geeslin. There were no tests or procedures to be performed on the videotape that would have led to other evidence that may be exculpatory; the tape itself was either exculpatory or it was not. Id. However, the court of appeals decided that Geeslin did not meet his burden to show that the video evidence was materially exculpatory, because his assertion that he did not cross over the white line while driving, standing alone, without independent evidence demonstrating that he did not cross the white line, was insufficient to fulfill his burden.

{¶ 14} The Ohio Supreme Court affirmed the conviction of Geeslin, but did not agree with the court of appeals' analysis. The Supreme Court determined that the missing portion of a cruiser videotape that had been inadvertently taped over, which could be used *only* to challenge or corroborate the justification for a traffic stop, was *not* materially exculpatory, because it could not be used to challenge "the *substance* of the allegations" against the defendant and "would not have been used to acquit the [defendant] of the charge itself." *Geeslin*, 2006-Ohio-1261, ¶ 13. The Supreme Court concluded that the missing evidence could not have been materially exculpatory, but was potentially useful. "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *Geeslin*, ¶ 10, following *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281.

{¶ 15} Unlike the evidence involved in the *Geeslin* case, the *entire* cruiser cam videotape in this case, and not just a portion of it, was taped over. In this case, the videotape would have contained the scenario giving rise to the traffic stop of the car in which defendant was a passenger, but more importantly, could also

have included both the video and audio of the statement that Jones said defendant had made to put the gun violation on him. According to Stechschulte, but for that statement and without other evidence, the instant charges would not have been brought. The video or audio evidence could be used to challenge "the *substance* of the allegations" against the defendant and could have been used to acquit the defendant of the charge itself. Accordingly, the analysis used by the United States Supreme Court in *Youngblood* and by the Ohio Supreme Court in *Geeslin* for potentially useful evidence is inapplicable.

{¶ 16} This court's analysis must be limited to a determination whether the videotape evidence was materially exculpatory. Evidence is materially exculpatory when it possesses an exculpatory value that is apparent before the evidence is destroyed and is of such a nature that the defendant will be unable to obtain comparable evidence by other reasonable means. *California v. Trombetta,* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413; *State v. Benton* (2000), 136 Ohio App.3d 801, 737 N.E.2d 1046. The Ohio Supreme Court has also held that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898. Generally, the burden to show that lost or destroyed evidence is materially exculpatory is on the defendant. See *State v. Jackson* (1991), 57 Ohio St.3d 29, 565 N.E.2d 549; *State v. Cahill,* 3rd Dist. No. 17–01–19, 2002-Ohio-4459, 2002 WL 1990406.

{¶ 17} Now this is where the analysis becomes more difficult. As noted above, the court of appeals determined that Geeslin's assertion that he did not cross over the white line, without independent evidence demonstrating that he did not cross the white line, was insufficient to fulfill his burden to show that the video evidence was materially exculpatory.

{¶ 18} However, the court of appeals' decision to keep the burden on the defendant in *Geeslin* was based on the fact that the evidence had been destroyed prior to a specific discovery request having been made and because Geeslin has not shown that the state failed to respond in good faith to a discovery request. *Geeslin,* 2006-Ohio-1261, 2006 WL 687519, at 18–19. In this case, the evidence demonstrates that the cruiser cam videotape number 05–023 was mishandled and was taped over (destroyed) *after* the defendant made a specific request for preservation of "[a]ny and all recordings, whether audio or video, of any law enforcement activities related to" the defendant's case. That request put the state on notice that the defendant may have considered the evidence relevant to his defense. This case is different from *Geeslin.*

{¶ 19} As stated earlier, the defendant generally bears the burden of proving that the lost or destroyed evidence was materially exculpatory. *Jackson*, 57 Ohio St.3d at 33, 565 N.E.2d 549. However, some courts shift the burden of proof regarding the exculpatory value of the evidence when the defendant moves to have the evidence preserved and the state destroys the evidence. *Columbus v. Forest* (1987), 36 Ohio App.3d 169, 522 N.E.2d 52; *State v. Sneed*, 4th Dist. No. 06CA18, 2007-Ohio-853, 2007 WL 613704, at ¶ 20, citing *State v. Benton* (2000), 136 Ohio App.3d 801, 737 N.E.2d 1046. See also *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, ¶ 11; *State v. Cahill*, Shelby App. No. 17–01–19, 2002-Ohio-4459, 2002 WL 1990406, at ¶ 14 and 17. But see *State v. Canter*, Fairfield App. No. 01CA51, 2002-Ohio-3473, 2002 WL 1445358, wherein the court discussed and rejected the burden-shifting rule. The court of appeals in *Geeslin* accepted the *Forest* line of cases, but stated that the *Forest* rule shifts the burden onto the state only after a specific discovery request has been made, because that request put the state on notice that the defendant may have considered the evidence relevant to his defense. *Geeslin* at ¶ 18. The court of appeals in *Geeslin* stated at ¶ 17:

The *Forest* rule parallels the Supreme Court's reasoning in *Trombetta* and *Youngblood:* if the defendant demonstrates that the government destroyed the evidence after a request to preserve evidence, it is reasonable to conclude that the police, by their very conduct, consider the evidence to be potentially helpful to the defense. Put another way, by proving that the police responded in bad faith to a discovery request by destroying the evidence, the defendant has, to some extent, established the exculpatory value of the evidence.

{¶ 20} So in this case, where the defendant made a specific request for preservation of the videotape *before* it was taped over, and the police failed to preserve the tape, the *Forest* line of cases applies, and the burden shifts to the state to show the inculpatory value of the evidence. See *State v. Benton*, 136 Ohio App.3d 801, 737 N.E.2d 1046. In this case, it is uncontroverted that the state failed to preserve the evidence despite defendant's specific request; thus, the burden shifted to the state to demonstrate that the tape was not materially exculpatory. *Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693. See also *State v. Anderson*, Hamilton App. No. C–050382, 2006-Ohio-1568, 2006 WL 825270 (the defendant filed a separate motion to preserve "any video or audio recordings at the station" and the court held that "[t]his was a specific request for preservation of the evidence").

{¶ 21} The tape itself was either exculpatory or it was not. The state failed to show that the video or audio contents of the tape were not materially exculpatory. As noted above, Detective Stechschulte testified that but for that statement and without other evidence, the instant charges would not have been brought. Jones

said that defendant made the statement to put the gun violation on him. If Jones's testimony was undisputed, then the state would have met its burden under *Forest.* See *Cahill,* 2002-Ohio-4459, 2002 WL 1990406, ¶ 18. However, in this case, defendant presented testimonial evidence that was contrary to Jones's testimony. See id. at fn. 3. Given the record in the case, it was equally possible that the tape would have been exculpatory as inculpatory. The tape would have provided the only possible objective evidence of the events on the night defendant was arrested and of what he said or did not say. Thus, the video or audio evidence could be used to challenge "the *substance* of the allegations" against the defendant and could have been used to acquit the defendant of the charge itself. Further, the evidence was unique and not obtainable by other means.

{¶ 22} A dilemma presented in this case is that there was no direct evidence of bad faith on the part of the police or prosecution. However, "[t]he suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is *material* either to guilt or to punishment, *irrespective* of the good faith or bad faith of the prosecution." (Emphasis added.) *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph four of the syllabus, following *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In effect, the state "suppressed" the evidence by taping over it. While there is absolutely no evidence of bad faith, the violation of due process is irrespective of the good faith or bad faith of the prosecution.

{¶ 23} There is a reasonable probability that had the evidence been disclosed to the defense, the result of this proceeding would be different. A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Johnston,* 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Confidence in the criminal justice system is undermined when the type of carelessness in handling evidence as is evident in this case occurs.

{¶ 24} Given the peculiar facts of this case and limited to the circumstances in this case alone, the court finds that defendant's due process rights were violated to the extent that dismissal is warranted when Jones's cruiser cam videotape was taped over, thus destroying evidence contained on the tape pertaining to the offense for which defendant was later indicted, *after* the defendant made a specific request of law enforcement to preserve the videotape and even though there is no evidence that law-enforcement personnel acted in bad faith, but were, at most, *negligent* in the manner they handled the tape.

{¶ 25} Therefore, because the state violated the defendant's due process rights when it negligently taped over the evidence that the defendant specifically requested, this case is dismissed at the state's costs.

Cause dismissed.