JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Kenneth Blackshaw ("defendant") appeals from his conviction for two counts of drug possession, drug trafficking, and possession of criminal tools. Defendant challenges the trial court's denial of his motion to suppress and his motions to dismiss. For the reasons that follow, we affirm.
 {¶ 2} At approximately 8:35 p.m. on February 27, 2003, Cleveland police officers Svoboda and Wolf stopped defendant's vehicle after seeing him drive through a red light at the intersection of East 99th and Superior. Wolf approached the passenger side of the vehicle while Svoboda approached the driver. Wolf saw defendant reaching down underneath the seat as they approached. Wolf used his flashlight to observe the inside of the vehicle. According to Wolf, defendant and the passenger were arrested because he saw a crack pipe on the floorboard of the vehicle. The passenger was searched, handcuffed, and placed in the zone car. Officer Svoboda asked defendant to exit the vehicle. Defendant attempted to flee during the pat-down search of his coat pocket area. The officers recovered a large amount of crack cocaine and money from defendant during their search of his person incident to his arrest.
 {¶ 3} Police inventoried and towed the vehicle defendant was driving prior to his arrest. The vehicle was subsequently demolished while in police custody. Defendant's private investigator, Thomas Pavlish, obtained access to a vehicle of the same make, model, and year as the one seized from defendant. Pavlish photographed the vehicle and the photographs were introduced during his testimony at the suppression hearing. Pavlish reviewed the police report and photographed the vehicle from a vantage point outside the passenger side of the vehicle. From that location, he could not see the floorboard of the vehicle between the two front seats. Pavlish admitted that he did not take a photograph from the middle window on the passenger side of the vehicle.[1]
 {¶ 4} The co-defendant, Walter Hall ("Hall"), testified that he was the passenger in the vehicle driven by defendant on February 27, 2003. He worked for defendant's cleaning service and they were on the way to a job. Hall stated that the stop light at East 99th and Superior was still yellow when defendant drove through the intersection. Officer Wolf allegedly removed Hall from the vehicle, asked what they were putting under the seat, and then handcuffed him. Hall claimed the bag of cocaine reportedly found on defendant's person was in his jacket. According to Hall, the bag fell out of his pocket and onto the floor. It is Hall's testimony that he found the drugs "in the ghetto" and that one could find 41 grams of crack cocaine laying on the ground "on any given day." Hall also maintained the crack pipe reportedly seen by Wolf on the floorboard of defendant's vehicle was initially in his back pocket. Wolf allegedly saw the pipe on the back of Hall's seat after taking him out of the car. Hall says he told police the night of his arrest that both the crack cocaine and the pipe belonged to him.
 {¶ 5} On cross-examination, Hall admitted that he is a drug addict and had abused crack cocaine just a "couple days" prior to the suppression hearing. The State established several inconsistencies between Hall's affidavit concerning the events leading up to defendant's arrest and his testimony in court about the same. Hall estimates that he has about five or six felony convictions on his record.
 {¶ 6} Defendant was arrested on February 27, 2003. The State initially indicted defendant on charges related to his arrest in Case No. CR-435923. In that case, defendant filed both a motion to suppress and a motion to dismiss. On September 4, 2003, the trial court conducted a hearing on defendant's motion to dismiss based on failure to preserve evidence. The trial court's denial of that motion was journalized on September 11, 2003. On June 18, 2004, the State moved for continuance, which the trial court denied. The matter was then dismissed without prejudice.
 {¶ 7} On July 30, 2004, the State re-indicted defendant in Case No. CR-454952. Again, defendant filed a motion to dismiss and a motion to suppress. On September 21, 2004, the trial court denied the motion to dismiss on both grounds raised by defendant. On September 20, 2004, the trial court conducted an evidentiary hearing on the motion to suppress, which was denied. Subsequently, defendant entered a no contest plea, was found guilty and sentenced to a four-year prison term.
 {¶ 8} Defendant now appeals raising three assignments of error for our review.
 {¶ 9} "I. The trial court erred in denying defendant's motion to dismiss based on the violation of defendant's due process rights."
 {¶ 10} We conduct a de novo review of judgments involving a defendant's motion to dismiss an indictment for the alleged failure by the State to preserve exculpatory evidence. State v. Johnson, Cuyahoga App. No. 82527, 2003-Ohio-4569, ¶ 7, citing United States v. Jobson,
(C.A.6, 1996), 102 F.3d 214 and United States v. Wright (C.A.6, 2001),260 F.3d 568, 570.
 {¶ 11} The State's failure to disclose "material exculpatory evidence" violates the Due Process Clause of the Fourteenth Amendment as interpreted by the United States Supreme Court in Maryland v. Brady,373 U.S. 83 (1963); Arizona v. Youngblood, 488 U.S. 51, 57 (1988); Statev. Johnston (1988), 39 Ohio St.3d 48. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." State v. Jackson (1991), 57 Ohio St.3d 29, 33, citing United States v. Agurs (1976), 427 U.S. 97, 109-110 and UnitedStates v. Bagley (1985), 473 U.S. 667. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id.
 {¶ 12} "[T]he Due Process Clause requires a different result when [dealing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant * * * therefore * * * unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58. To establish bad faith, the defendant must show that the evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta,467 U.S. 479, 489 (1984).
 {¶ 13} Here, defendant claims his due process rights were violated because police destroyed the vehicle he was driving at the time of his arrest. He argues that the vehicle was material and exculpatory for the reason that without it he had no opportunity to present evidence that the drugs found by the officers in the vehicle were not in plain sight. At best, this establishes a mere possibility that the evidence could have aided the defense. The evidence, therefore, cannot be considered "material and exculpatory" under the relevant analysis.
 {¶ 14} Next, we examine the vehicle under the "potentially useful" analysis that requires defendant to establish that the non-disclosure was the result of bad faith and that he was unable to obtain comparable evidence. Defendant argues that police did not follow proper procedure prior to destroying the vehicle and that this amounts to bad faith. Whether the police adhered to proper procedures in disposing the vehicle will not by itself establish bad faith. Defendant must further prove he was unable to obtain comparable evidence through other reasonably available means.
 {¶ 15} The 1994 Dodge minivan that was seized at the time of defendant's arrest was destroyed after unsuccessful efforts to contact the titled owner at the address on file with the BMV. Nonetheless, defendant was able to obtain comparable evidence through other reasonably available means. Defendant's investigator obtained access to a 1994 Dodge Caravan with tinted windows at the Strongsville Dodge dealership. The investigator photographed the vehicle from various angles for use at trial. (See defendant's Ex. A, B, D-O). The investigator testified, inter alia, he could not see the floorboard in between the two front seats while standing two and three feet away from the passenger side. Because defendant was able to obtain comparable evidence for use in his defense this assignment of error lacks merit and is overruled.
 {¶ 16} "II. The trial court erred in denying defendant's motion to dismiss based on the violation of defendant's right to a speedy trial."
 {¶ 17} R.C. 2945.71(C)(2) requires the State to bring the accused to trial within 270 days after his arrest. "Each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). R.C. 2945.72 provides various grounds for extending the statutory time limits. Specifically, R.C. 2945.72(E) and (H) permit extension of the time for the following:
 {¶ 18} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 19} "* * *
 {¶ 20} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;"
 {¶ 21} "For purposes of computing how much time has run against the state under R.C. 2945.71 et seq., the time period between the dismissal without prejudice of an original indictment and the filing of a subsequent indictment, premised upon the same facts as alleged in the original indictment, shall not be counted unless the defendant is held in jail or released on bail pursuant to Crim. R. 12(I)." State v. Broughton
(1991), 62 Ohio St.3d 253, paragraph one of the syllabus. In the case of re-indictment, the time of defendant's arrest on the subsequent indictment resumes the running of the speedy-trial time period. Id. at paragraph 2 of the syllabus.
 {¶ 22} Defendant was arrested on February 27, 2003 and posted bond on April 18, 2003. This counts as 150 speedy trial days pursuant to R.C. 2945.71(E). On May 5, 2003, a pretrial was held and continued at defendant's request until June 11, 2003. Therefore, another 17 days of the speedy trial period accumulated between April 18, 2003 and May 5, 2003. Defendant then filed a motion to suppress on May 30, 2003 and a motion to dismiss on August 1, 2003, tolling speedy trial time.[2] The trial court granted defendant's motion to dismiss on June 18, 2004. The total speedy trial time at the point of dismissal was 167 days.
 {¶ 23} Defendant was re-indicted on July 30, 2004. Between the time of the dismissal on June 18, 2004 and until August 9, 2004 defendant was neither incarcerated nor on bail. Defendant was arrested on the re-indictment on August 9, 2004 and posted bail on August 11, 2004; accumulating another 9 days of speedy trial time. Another 14 days of speedy trial time ran between August 11, 2004 and August 26, 2004. On August 26, 2004, defendant filed a motion to dismiss and filed a motion to suppress on September 2, 2004; both of which tolled the speedy trial time. The trial court denied both motions on September 20, 2004. One day of speedy trial time accumulated until defendant entered a no-contest plea on September 21, 2004. Therefore, only 191 of the 270 statutory speedy trial days had elapsed. Accordingly, this assignment of error lacks merit and is overruled.
 {¶ 24} "III. The trial court erred in denying defendant's motion to suppress based on the violation of defendant's Fourth Amendment Rights."
 {¶ 25} When considering a motion to suppress, the trial court assumes the role of trier-of-fact and is in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Kobi
(1997), 122 Ohio App.3d 160. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting the facts as found by the trial court as true, the appellate court must then independently determine, as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. Id.
 {¶ 26} A police officer may stop a vehicle based on probable cause that a traffic violation has occurred. Dayton v. Erickson (1996),76 Ohio St.3d 3.
 {¶ 27} Here, both officers stated that they observed defendant commit a traffic violation by driving through a red light. The co-defendant claimed the light was yellow. We defer to the trial court's acceptance of the officers' testimony when it found that the "stop itself * * * was by the book." We further note that the trial court found Hall less than credible.[3] Thus, we conclude that the stop was lawful.
 {¶ 28} Warrantless searches are per se unreasonable under the Fourth Amendment, subject to a few exceptions. State v. Halczyszak (1986),25 Ohio St.3d 301, 303, quoting Katz v. United States (1967), 389 U.S. 347,357. One exception is the plain-view doctrine whereby police may seize articles of incriminating character. Id., citing Coolidge v. NewHampshire (1971), 403 U.S. 443. To qualify under this exception, three elements must be established: "[1] the initial intrusion that brought the police into a position to view the object must have been legitimate. [2] the police must have inadvertently discovered the object. [3] the incriminating nature of the object must have been immediately apparent." Id., citing State v. Williams, 55 Ohio St.2d 82. Based on the record evidence, all three elements have been satisfied. The officers stopped defendant for a traffic violation, observed him reaching underneath his seat, and then saw a crack pipe in plain view between defendant and Hall. Accordingly, the officers were justified in arresting defendant. Once a person is under arrest, "officers may perform a full search of an arrestee's person regardless of the offense prompting the arrest." Statev. Jones (2000), 88 Ohio St.3d 430, 439. The money and drugs were seized from defendant's person pursuant to a search incident to a lawful arrest. Accordingly, the trial court did not err in denying defendant's motion to suppress. This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Kilbane, J., concur.
[1] Pavlish assumed that Officer Wolf was referring to the front passenger door of the vehicle in the police report.
[2] The docket further reflects continuances at defendant's request on October 8, 2003 and January 1, 2004. Defendant executed waivers of speedy trial for the periods of December 16, 2003 to April 30, 2004 and May 6, 2004 to August 1, 2004.
[3] In doing so, the trial court stated on the record that "there [was] every reason to believe that Mr. Hall was under the influence." The court indicated it had almost entirely discounted Mr. Hall's testimony in rendering its decision.