DECISION AND JUDGMENT ENTRY
{¶ 1} Allen Sneed, Sr., appeals the Lawrence County Municipal Court's judgment denying his "Motion to Suppress or Dismiss." Initially, Sneed argues the court erred in failing to suppress the evidence obtained as a result of his traffic stop. He contends Trooper Baker did not have probable cause to stop his vehicle. We disagree. In order to exit a highway, a driver must move right or left upon the highway. Therefore, a driver exiting a highway must give an appropriate signal. Because Trooper Baker observed Sneed exit the highway without signaling, he had probable cause to stop Sneed.
 {¶ 2} Sneed also argues that the court erred in failing to dismiss the case because the state failed to properly preserve the videotape of his traffic stop. He argues that the videotape of his stop is "essentially worthless" as evidence because it is *Page 2 
of poor quality and does not show his field sobriety tests. However, neither the poor quality of the videotape nor Trooper Baker's failure to conduct the field sobriety tests within view of the video camera is fatal to the state's case. Therefore, the court properly denied Sneed's motion to dismiss the case.
 I. {¶ 3} In the early hours of January 20, 2006, Ohio State Highway Patrol Trooper Josh Baker observed a vehicle driven by Sneed exit U.S. Route 52 at Solida Road without using a turn signal. Trooper Baker followed Sneed's vehicle until it reached a safe place for a traffic stop. He then turned on his overhead lights and stopped the vehicle. Upon approaching the vehicle, Trooper Baker noticed a strong odor of alcohol coming from Sneed. Therefore, he asked Sneed to exit the vehicle and perform several field sobriety tests. After observing Sneed's performance on the field sobriety tests, Trooper Baker arrested Sneed and transported him to the Ohio State Highway Patrol Post where a BAC DataMaster test was administered. Sneed registered a reading of 0.113, which is above the legal limit of 0.08. As a result, the state charged Sneed with operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(d) and driving under OVI suspension in violation of R.C. 4510.14(A). Trooper Baker indicated on the citation that it was Sneed's third OVI offense.
 {¶ 4} Sneed subsequently requested discovery from the state. The state responded by providing a number of items, including a videotape of Sneed's traffic stop. On March 6, 2006, Sneed filed a "Motion to Suppress or Dismiss". In the motion, Sneed argued that any evidence obtained as a result of his traffic stop should be suppressed because Trooper Baker did not have probable cause to initiate the stop. Additionally, *Page 3 
he argued that the case should be dismissed because the state failed to preserve potentially exculpatory evidence. He noted that the videotape of his traffic stop does not show the field sobriety tests because Trooper Baker conducted the tests out of view of the in-car video camera. Moreover, he noted that the videotape of the traffic stop is of poor quality and contains static during some of the conversation. He asserted that the problems with the videotape render it "essentially useless" to his defense.
 {¶ 5} Three weeks after Sneed filed his motion, the trial court held a hearing at which Trooper Baker testified. Trooper Baker testified that he observed Sneed's vehicle exit U.S. Route 52 without using a turn signal. He followed the vehicle until it reached the Food Fair and then turned on his overhead lights. Trooper Baker testified that when he turned on his overhead lights, this also activated his in-car video camera. The video camera was pointing forward, out the front window of his patrol car. Trooper Baker testified that for officer safety reasons, he usually conducts field sobriety tests at the rear of his patrol car. He testified that he conducted Sneed's field sobriety tests at the rear of the patrol car because he did not believe there was adequate room to conduct the tests in front of the car given their position in the store's parking lot. Trooper Baker stated that he had reviewed the videotape of Sneed's traffic stop. He acknowledged that portions of the videotape are of poor quality. Specifically, he indicated that it is possible to hear what is being said at the beginning of the videotape. However, part way through the traffic stop, the battery in his microphone begins to die and the audio portion of the videotape becomes staticky.
 {¶ 6} On March 27, 2006, the court issued a decision denying Sneed's motion. The court concluded that Trooper Baker had probable cause to stop Sneed's vehicle. In *Page 4 
addition, the court concluded that the poor quality of the videotape did not necessitate dismissal of the case. The court found that the state did not conceal evidence from Sneed. The court further found that the state did not do anything, even negligently, to "dilute the nature of the evidence." The court stated that it would "not infer that there was some exculpatory evidence favorable to [Sneed] that was not preserved by this tape due to its quality."
 {¶ 7} One month later, Sneed entered a plea of no contest to both charges. The court found Sneed guilty of the charges and sentenced him to a jail term, which the court then stayed pending appeal. Sneed now appeals the court's judgment, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN HOLDING THAT THE TROOPER HAD PROBABLE CAUSE TO STOP DEFENDANT-APPELLANT.
 II. THE TRIAL COURT ERRED IN REFUSING TO DISMISS THE CASE WHEN THE TAPE OF THE STOP AND ARREST WAS SO DEFECTIVE THAT ITS VALUE AS POTENTIALLY EXCULPATORY EVIDENCE WAS VOID.
 II. {¶ 8} In his first assignment of error, Sneed argues that the trial court erred in denying his motion to suppress. Specifically, he argues the court erred in finding that Trooper Baker had probable cause to stop his vehicle.
 {¶ 9} Our review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve questions of fact and evaluate witness credibility. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at *Page 5 
¶ 8, citing State v. Mills (1992), 62 Ohio St.3d 357, 366. Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Landrum (2000),137 Ohio App.3d 718, 722; State v. Medcalf (1996), 111 Ohio App.3d 142,145. Accepting those facts as true, we must independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. See Burnside at ¶ 8. See, also,State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 10} The Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I, of the Ohio Constitution protect individuals from unreasonable searches and seizures by the state. SeeBowling Green v. Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563, at ¶ 11. Under the exclusionary rule, any evidence obtained as a result of an unreasonable search and seizure must be suppressed. Mapp v. Ohio (1961),367 U.S. 643, 655. See, also, State v. Jackson, 102 Ohio St.3d 380,2004-Ohio-3206, at ¶ 8.
 {¶ 11} Stopping an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. Delaware v.Prouse (1979), 440 U.S. 648, 653; Whren v. United States (1996),517 U.S. 806, 809-10. Therefore, an automobile stop is "subject to the constitutional imperative that it not be `unreasonable' under the circumstances." Whren, 517 U.S. at 810. As a general matter, the decision to stop an automobile is reasonable "where the police have probable cause to believe that a traffic violation has occurred." Id. See, also, Dayton v. Erickson, 76 Ohio St.3d 3, 11, 1996-Ohio-431
(Holding that "where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is *Page 6 
not unreasonable under the Fourth Amendment * * *."). Probable cause to effect an automobile stop exists when a police officer actually observes a traffic violation. See, e.g., Erickson. See, also, State v.Brungs, Pickaway App. No. 05CA18, 2005-Ohio5776, at ¶ 31; State v.Kellough, Pickaway App. No. 02CA14, 2003-Ohio-4552, at ¶ 22.
 {¶ 12} Here, Trooper Baker testified that he observed Sneed's vehicle exit the highway without using a turn signal. However, Sneed argues that exiting a highway without using a turn signal is not a violation of R.C.4511.39. Specifically, he argues that exiting from a highway does not constitute moving right or left upon a highway. The state disagrees, arguing that in order to exit a highway, a driver must necessarily move right or left upon the highway.
 {¶ 13} R.C. 4511.39(A) provides, in relevant part: "No person shall turn a vehicle * * * or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided." Under R.C. 4511.01(B)(B), "highway" is defined as "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel."
 {¶ 14} The trial court apparently determined that the Solida Road exit does not require a turn. The record supports this determination. Thus, the issue presented for our review is whether exiting a highway involves moving right or left upon the highway.
 {¶ 15} A driver exiting a highway must move out of his or her current lane of travel into the exit lane, a temporary lane of travel specifically intended for vehicles exiting the highway. In order to accomplish this, a driver must move right or left upon *Page 7 
the highway. Thus, exiting a highway requires a driver to move right or left upon the highway. See Trahan v. State (Tex.App. 2000),16 S.W.3d 146, 147 (Suggesting that exiting a freeway involves moving right or left on a roadway.). Given this, we conclude that a driver must give "an appropriate signal" when exiting a highway. See R.C. 4511.39(A).
 {¶ 16} We find support for our conclusion in the Ohio Department of Public Safety's Digest of Ohio Motor Vehicle Laws ("DMVL").[1] In Section 9, the DMVL addresses special conditions, including freeway driving. See DMVL at 58-59. Among the issues discussed in the section on freeway driving is the issue of how "to get off an expressway." DMVL at 59. In discussing this issue, the DMVL states, in relevant part: "Watch for signs, signal your proper turn-off, and move to the correct exit lane." DMVL at 59. And while the DMVL refers specifically to expressways, an expressway is simply a type of highway. See R.C.4511.01(ZZ) (Defining "expressway" as "a divided arterial highway for through traffic with full or partial control of access with an excess of fifty percent of all crossroads separated in grade."). Thus, we believe the discussion about exiting an expressway applies to other types of highways as well.
 {¶ 17} Because Trooper Baker observed Sneed's vehicle exit the highway without using a signal, he had probable cause to stop the vehicle. Accordingly, we overrule Sneed's first assignment of error.
 III. {¶ 18} In his second assignment of error, Sneed argues the trial court erred in denying his motion to dismiss the case. Sneed asserts that the videotape of his traffic *Page 8 
stop is "essentially worthless" as evidence because it is of poor quality and does not show his field sobriety tests. Relying on the Sixth District Court of Appeal's decision in State v. Benton (2000),136 Ohio App.3d 801, he argues that the case should be dismissed because the state failed to properly preserve the videotape evidence.
 {¶ 19} We review de novo a trial court's decision involving a motion to dismiss on the ground that the state failed to preserve exculpatory evidence. See State v. Blackshaw, Cuyahoga App. No. 85432,2005-Ohio-5203, at ¶ 10; State v. Combs, Delaware App. No. 03CA-C-12-073, 2004-Ohio-6574, at ¶ 25.
 {¶ 20} The Due Process Clause protects a defendant from being convicted of a crime where the state has failed to preserve materially exculpatory evidence or has destroyed, in bad faith, potentially useful evidence. See Arizona v. Youngblood (1988), 488 U.S. 51, 57-58;State v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944, at ¶ 10. Generally, the defendant bears the burden of proving that the lost or destroyed evidence was materially exculpatory. See Benson at ¶ 11, citing State v. Jackson (1991), 57 Ohio St.3d 29, 33. However, some courts shift the burden of proof regarding the exculpatory value of the evidence where the defendant moves to have the evidence preserved and the state destroys the evidence. See Benton, 136 Ohio App.3d at 805 806. See, also Benson, 154 Ohio App.3d 495, at ¶ 11; Columbus v. Forest
(1987), 36 Ohio App.3d 169, 173.
 {¶ 21} In Benton, the defendant sought discovery of a videotape of his traffic stop. The state, however, did not produce the tape. Eventually, the defendant discovered that the tape, if one ever existed, had been erased and reused in accordance with normal police procedure. The defendant then sought dismissal of the *Page 9 
case due to the state's failure to preserve the tape. The trial court denied the motion, and the defendant appealed. On appeal, the defendant argued that the state's destruction of the tape violated his due process rights. Assuming that the videotape had existed, the Sixth District Court of Appeals held that "where a defendant moves to have evidence preserved and that evidence is nonetheless destroyed by the state in accordance with its normal procedures, the appropriate remedy is to shift the burden to the state to show that the evidence was not exculpatory." Benton, 136 Ohio App.3d at 805, citing Forest,36 Ohio App.3d at 173. The court determined that the state did not meet its burden of showing that the videotape was not exculpatory.Benton at 806. Specifically, the court noted that given the record in the case, it was "equally possible that the tape would have been exculpatory as inculpatory." Id. The court stated: "Because appellant testified that he disputes much of the testimony that the officer gave at the suppression hearing, the tape would have provided the only possible objective evidence of the events as they happened on the night that appellant was stopped." Id. In the end, the court held that the state violated the defendant's due process rights when it destroyed the evidence that the defendant specifically requested. Id.
 {¶ 22} This case differs from Benton. In this case, the state did not destroy evidence or fail to preserve evidence. Rather, the state provided Sneed with the videotape evidence of his traffic stop. Unfortunately, the videotape evidence is of poor quality and does not show the field sobriety tests.
 {¶ 23} We have previously addressed the issue of a law enforcement officer's failure to conduct field sobriety tests within view of the patrol car's video camera. See State v. Wooten, Athens App. No. 01CA31, 2002-Ohio-1466. In Wooten, we noted that *Page 10 
the Due Process Clause does not require the state to employ a particular investigative tool. Id., citing Youngblood, 488 U.S. at 59. We later noted that the state "has no constitutional duty to ensure that [OVI] defendants' traffic stops and sobriety tests are recorded on video or audio tape." Wooten. Ultimately, we concluded that "[b]ecause no constitutional violation arises merely from a law enforcement officer's failure to employ a particular investigative tool, the suppression of evidence or the dismissal of a charge is not warranted." Id.
 {¶ 24} Here, Sneed argues that the case should be dismissed because the videotape of his traffic stop is of poor quality and does not show the field sobriety tests. However, as our decision in Wooten makes clear, Trooper Baker's failure to conduct the field sobriety tests within view of the video camera does not violate Sneed's due process rights. See Wooten. Thus, dismissal of the case on this basis is not warranted. See id.
 {¶ 25} As for the poor quality of the videotape, there is no evidence that the state altered the tape. Indeed, Sneed does not claim that the videotape once contained exculpatory evidence that, due to the actions of the state, is no longer present on the tape. Instead, he argues that if the microphone and/or video recorder had not malfunctioned, the tape might have captured potentially exculpatory evidence. However, as noted above, the Due Process Clause protects a defendant from being convictedwhere the state fails to preserve materially exculpatory evidence ordestroys, in bad faith, potentially useful evidence. SeeYoungblood, 488 U.S. at 57-58. Here, the state did not destroy evidence or fail to preserve evidence that once existed. Rather, the state provided Sneed with the videotape evidence that it had collected. And while it is unfortunate that the videotape evidence *Page 11 
is of poor quality, this does not give rise to a due process violation. Therefore, dismissal of the case on this basis is not warranted.
 {¶ 26} Having reviewed the record, we conclude that the state did not destroy evidence or fail to preserve evidence. Thus, we conclude the trial court properly denied Sneed's motion to dismiss. Accordingly, we overrule Sneed's second assignment of error.
 JUDGMENT AFFIRMED. *Page 12 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. and Abele, J.: Concur in Judgment and Opinion.
[1] The Digest of Ohio Motor Vehicle Laws is available at http://bmv.ohio.gov/pdf_forms/HSY-7607.pdf (last visited on January 21, 2007). *Page 1