[Cite as *Kent v. Lusane*, 2022-Ohio-4057.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

CITY OF KENT, OHIO,

        Plaintiff-Appellee,

    - vs -

MATTHEW M. LUSANE,

        Defendant-Appellant.

**CASE NO. 2022-P-0011**

Criminal Appeal from the
Municipal Court, Kent Division

Trial Court No. 2021 TRD 01381 K

**O P I N I O N**

Decided: November 14, 2022
Judgment: Affirmed

*Hope L. Jones*, The City of Kent, Ohio Law Director, and *Eric Fink*, Assistant Law Director, 320 South Depeyster Street, Kent, OH 44240 (For Plaintiff-Appellee).

*Matthew M. Lusane*, pro se, P.O. Box 465, Ravenna, OH 44266 (Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Matthew M. Lusane ("Mr. Lusane"), appeals his minor misdemeanor conviction for failure to yield following a bench trial in the Portage County Municipal Court, Kent Division.

{¶2} Mr. Lusane asserts three assignments of error, contending that (1) appellee, the city of Kent ("the city"), and the City of Kent Police Department ("the Kent PD") failed to preserve and disclose material exculpatory evidence or destroyed potentially useful evidence in bad faith; (2) the trial court erred in finding him guilty beyond a reasonable doubt; and (3) his conviction is against the manifest weight of the evidence.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) Mr. Lusane did not meet his burden to establish that his due process rights were violated. Mr. Lusane offered no proof that video evidence of the vehicle collision or investigation would have been materially exculpatory. Even assuming the video evidence was at least potentially useful, Mr. Lusane failed to establish that the city and/or the Kent PD acted in bad faith in failing to preserve it.

{¶5} (2) Mr. Lusane has not established that there was insufficient evidence to support his conviction for failure to yield. The police officer's testimony constituted "evidence" that, if believed, could properly serve as the basis for the trial court's verdict. In addition, Mr. Lusane cites no authority indicating that the necessary elements of the offense include the preferred driver's lack of negligence in avoiding a collision.

{¶6} (3) Mr. Lusane's conviction is not against the manifest weight of the evidence. Despite Mr. Lusane's efforts to impeach the officers' credibility, the trial court chose to believe their testimony. Upon review of the record, we cannot say that the trial court clearly lost its way or created a manifest miscarriage of justice.

{¶7} Thus, we affirm the judgment of the Portage County Municipal Court, Kent Division.

### Substantive and Procedural History

{¶8} On the evening of July 12, 2021, Officer Allen Womack ("Ofc. Womack") of the Kent PD was driving his cruiser north on Vine Street in Kent, Ohio, on his way back to the police station. At the same time, Mr. Lusane was backing his vehicle out of a residential driveway onto Vine Street. According to Ofc. Womack, Mr. Lusane continued backing up his vehicle as the cruiser approached. Ofc. Womack stopped his cruiser and

2

honked his horn. However, Mr. Lusane's vehicle collided with the front driver's side bumper of the cruiser.

{¶9} After the collision, Ofc. Womack activated his overhead lights, which automatically turned on his dash camera. Ofc. Womack would later testify that when the dash camera is activated, it captures the previous thirty seconds. Ofc. Womack called his superior, Lieutenant Ryan Gaydosh ("Lt. Gaydosh"), to complete a traffic investigation. Mr. Lusane exited his vehicle and began taking photos with his cell phone. Ofc. Womack approached and asked Mr. Lusane for his identification and proof of insurance. According to Ofc. Womack, he was not wearing a body camera because the Kent PD had not issued them.

{¶10} Lt. Gaydosh arrived at the scene and activated his body camera. He would later testify that the Kent PD was testing a new body camera system at that time but cameras were only deployed to sergeants and lieutenants. Upon arrival, Lt. Gaydosh spoke to both Ofc. Womack and Mr. Lusane, at which time Mr. Lusane said that Ofc. Womack "should have backed up out of his way." Lt. Gaydosh used his body camera to record the damage to both vehicles. He did not take written statements or review Ofc. Womack's dash camera video. Lt. Gaydosh issued a traffic citation to Mr. Lusane. Later that evening, Lt. Gaydosh took additional photos of Ofc. Womack's cruiser at the station.

{¶11} The next day, on June 13, Lt. Gaydosh charged Mr. Lusane in the Portage County Municipal Court, Kent Division, with failure to yield while entering the roadway, a minor misdemeanor, in violation of Kent Codified Ordinance ("KCO") 331.22. Mr. Lusane filed a request to plead not guilty and for a hearing within 90 days, which the trial court granted.

3

{¶12} On July 20, i.e., eight days after the accident, Mr. Lusane filed a discovery demand pursuant to Crim.R. 16, in which he requested, among other items, "[t]he dash camera video (in its entirety) from both police vehicles at the scene" and "[t]he body camera video (in its entirety) from both officers at the scene." The certificate of service states that Mr. Lusane sent his discovery demand to the prosecutor via regular mail at "215 East Summit Street, Kent, Ohio 44240."

{¶13} A pretrial was held on October 14. The prosecutor informed the trial court that Mr. Lusane had filed a discovery demand but sent it to the city's "old address"; thus, it was never delivered. However, Mr. Lusane communicated the requests, and the prosecutor provided him with the police report and a video release. The trial court instructed Mr. Lusane to bring a blank DVD to the Kent PD so that it could "burn [him] a copy of whatever they have."

{¶14} After the pretrial, Mr. Lusane submitted the video release to the Kent PD. Detective Dave Marino ("Det. Marino") serves as the Kent PD's evidence room manager. He issued a written response to Mr. Lusane indicating that no video of the July 12 incident existed. Det. Marino would later testify that pursuant to the Kent PD's current retention policy, videos regarding "traffic stops with enforcement and crashes" are only retained on the department's computer system for 60 days. Since Mr. Lusane submitted his request beyond this time period, no video existed at that time.

{¶15} The city's "records retention schedule" provides, in relevant part, that "Digital Recording Media," i.e., "cruiser video, handheld video, and other audio/video recording of departmental activities," are retained for a period of "30 days and no further administrative or legal value."

4

{¶16} Section 4.45 of the Kent PD's policy manual (revised November 14, 2019) provides, in relevant part:

{¶17} "All recordings captured by cruiser-mounted recording systems are subject to Ohio Public Records law, and are presumed to have evidentiary, investigative or administrative value. They are stored on the server for a pre-determined retention period in compliance with the City of Kent's Records Retention Policy, and then are purged automatically unless reclassified for a longer retention period according to their legal or administrative value."

{¶18} On November 18, 2021, the parties appeared for a bench trial. Mr. Lusane informed the trial court that he had not received video evidence in response to his discovery demand. A Kent PD officer was in attendance[1] and responded that the department no longer had access to the body camera footage. However, the officer indicated that the department responded to Mr. Lusane's request for dash camera video and burned the footage onto DVDs. The officer stated that he called Mr. Lusane's phone number but was unable to reach him. As a result, he left the DVDs at the records department.

{¶19} Mr. Lusane replied that he submitted the request form to the Kent PD along with blank CDs (as opposed to DVDs) and received a response stating that there was no video. However, if video evidence was in fact available, he requested a continuance to review it. The trial court granted the continuance and instructed Mr. Lusane to go to the Kent PD that day.

---

1. Although the hearing transcript does not identify the officer, other portions of the record suggest that it was Lt. Gaydosh.

5

Case No. 2022-P-0011

{¶20} On January 3, 2022, Mr. Lusane filed a motion to dismiss, contending that the city and Kent PD violated Crim.R. 16 and his due process rights. In his motion, he stated that he provided blank DVDs to the Kent PD following the November 18 hearing and was again informed that no video existed. He alleged that the city and Kent PD "lied" to the trial court regarding the existence of video evidence.

{¶21} On January 13, the parties appeared for the bench trial. Both sides presented argument on Mr. Lusane's motion to dismiss. The trial court overruled Mr. Lusane's motion, and the trial commenced.

{¶22} The prosecution presented testimony from Ofc. Womack and Lt. Gaydosh. Mr. Lusane recalled Ofc. Womack, presented testimony from Det. Marino, and submitted documentary exhibits. Mr. Lusane renewed his motion to dismiss, which the trial court overruled. Following closing arguments, the trial court found Mr. Lusane guilty of failure to yield in violation of KCO 331.22, imposed a $100 fine and court costs, and granted him 180 days to pay. The trial court also granted Mr. Lusane's oral motion to stay the judgment pending appeal.

{¶23} On the same date, the trial court filed judgment entries memorializing the verdict, sentence, and stay. Mr. Lusane subsequently filed a motion for a new trial pursuant to Crim.R. 33, which the trial court denied.

{¶24} Mr. Lusane appealed his judgment of conviction and presents the following three assignments of error:

{¶25} "[1.] The City of Kent & KPD failed to preserve and disclose material exculpatory evidence, or destroyed potentially useful evidence in 'bad faith.'

{¶26} "[2.] The conviction is against the manifest weight of the evidence.

6

{¶27} "[3.] The trial court erred in finding appellant-defendant guilty beyond a reasonable doubt."

## Due Process

{¶28} In his first assignment of error, Mr. Lusane contends that the city and Kent PD violated his due process rights by failing to preserve and disclose material exculpatory evidence or, alternatively, by destroying potentially useful evidence in bad faith.

{¶29} We construe Mr. Lusane's first assignment of error as challenging the trial court's denial of his motion to dismiss, which we review de novo. *See State v. Blackshaw*, 8th Dist. Cuyahoga No. 85432, 2005-Ohio-5203, ¶ 10.

### *Legal Principles*

{¶30} Due process and the interests of fundamental fairness "require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). To safeguard this right, the Supreme Court of the United States has established "'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *Id.*, quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

{¶31} The Supreme Court has held that the state violates a defendant's due process rights when it fails to preserve "material exculpatory evidence." *See id.* at 486-489. "Exculpatory evidence" is evidence favorable to an accused, which, "if disclosed and used effectively, * * * may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985). "[E]vidence shall be deemed material only if there is a reasonable probability that, had

7

the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.  This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense."  *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus.  "The defendant bears the burden to show that the evidence was materially exculpatory."  *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 74.

{¶32}  The Supreme Court has drawn a distinction between "material exculpatory evidence" and "potentially useful evidence."  *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10.  According to the court, the police do not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."  *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).  Thus, "[i]f the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation."  *Geeslin* at ¶ 9; *see Youngblood* at 57 (finding semen samples to be only "potentially useful" where "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant").

{¶33}  "'The term "bad faith" generally implies something more than bad judgment or negligence.'"  *Powell* at ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, ¶ 13.  "'"It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.  It also embraces actual intent to mislead or deceive another."'"  *Id*.,

8

quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus.

### *Materially Exculpatory*

**{¶34}** Mr. Lusane asserts that the video evidence was "materially exculpatory" because it was the "only objective, non-comparable evidence that captured the collision as it occurred." While we agree that video evidence may be "objective," this does not necessarily mean it is exculpatory.

**{¶35}** "Generally, missing videotape evidence that purports to contain images of an actual crime or event at issue speaks for itself. Simply put, such direct evidence is by its very nature either inculpatory or exculpatory, or some combination of the two * * *." *State v. Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 16.

**{¶36}** Here, the dash and body camera videos would have either supported the officers' version of events, and were inculpatory, or they would have contradicted it, and were exculpatory. They may have also shown a combination of the two. Crucially, however, Mr. Lusane offered no proof that the video evidence would have been materially exculpatory. *See State v. Lothes*, 11th Dist. Portage No. 2006-P-0086, 2007-Ohio-4226, ¶ 47. In fact, he never contended that the video evidence would contradict the officers' testimony and support his acquittal. Thus, this case is distinguishable from those Mr. Lusane cites in support. *See State v. Benton*, 136 Ohio App.3d 801, 806, 737 N.E.2d 1046 (6th Dist.2000) (the appellant testified that he disputed much of the officer's testimony); *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, ¶

9

12 (1st Dist.) (the testimony of the defendant and two eyewitnesses disputed much of the officer's testimony).

{¶37} Instead, Mr. Lusane appears to assert a "best evidence" type of argument, i.e., that only *objective* evidence could establish his guilt beyond a reasonable doubt. Courts have held that "a conviction may rest solely on the testimony of a single witness, if believed, and there is no requirement that a witness' testimony be corroborated to be believed." *See State v. Nicholson*, 8th Dist. Cuyahoga No. 110595, 2022-Ohio-2037, ¶ 180. Courts have also held that the best evidence rule does not apply when a witness testifies from his or her personal knowledge. *See United States v. Conteh*, 234 Fed.Appx. 374, 387 (6th Cir.2007); *D'Angelo v. United States*, 456 F.Supp. 127, 131 (D.Del.1978) (finding that the best evidence rule "is not applicable when a witness testifies from [p]ersonal knowledge of the matter, even though the same information is contained in a writing"). Accordingly, Mr. Lusane failed to establish that the video evidence was materially exculpatory.

### *Bad Faith*

{¶38} Even assuming the video evidence was at least "potentially useful," Mr. Lusane failed to establish that the city and/or the Kent PD acted in bad faith in failing to preserve it.

{¶39} "Why and when" video evidence was destroyed "are important considerations in determining whether the state acted in bad faith." *State v. Miller*, 161 Ohio App.3d 145, 2005-Ohio-2516, 829 N.E.2d 751, ¶ 13 (2d Dist.). Det. Marino testified that he received Mr. Lusane's request for video evidence on October 14, 2021. Since this request was submitted beyond the department's 60-day retention policy, no video

10

evidence existed. This result was also consistent with the 30-day period set forth in the city's records retention schedule and the Kent PD's policy manual (as revised in November 2019).

{¶40} Mr. Lusane asks us to find bad faith based on his submission of a discovery demand eight days after the collision in which he specifically requested all dash and body camera video. Pursuant to Crim.R. 49(B), discovery requests shall be served upon opposing counsel in accordance with Civ.R. 5(B). Civ.R. 5(B), in turn, delineates proper methods of service, including "mailing it to the person's last known address by United States mail, in which event service is complete upon mailing." Civ.R. 5(B)(2)(c). This court has held that "[i]f a defendant's service of a discovery request does not comply with Crim.R. 49(B) and Civ.R. 5(B), the prosecutor has no duty to respond." *Timberlake v. Graham*, 2018-Ohio-1450, 110 N.E.3d 592, ¶ 19 (11th Dist.). Here, Mr. Lusane mailed his request to the prosecutor at an incorrect address, and the record suggests that the prosecutor was not even aware of his request until the October 2021 pretrial.

{¶41} Mr. Lusane further asks us to find bad faith because the city and Kent PD sent him on a "wild goose chase" to obtain video evidence that no longer existed. It appears that the prosecutor and Lt. Gaydosh made assertions during the November 2021 hearing that turned out to be factually inaccurate. However, Lt. Marino, as the evidence room manager, was the individual who processed Mr. Lusane's request for video evidence. Thus, he had direct personal knowledge of the facts, and there is no indication that he was present at the November 2021 hearing.

{¶42} The cases that Mr. Lusane cites in support of his position are factually distinguishable. In *Benton, supra*, the appellant specifically requested the videotape of

11

his traffic stop, and the state did not respond in good faith. *See id.* at 806. In *Benson, supra*, the prosecutor informed the defendant during discovery that no videotape of his arrest existed; however, the officer's testimony at the suppression hearing clearly indicated that a videotape had existed. Despite being aware of the defendant's request for the videotape, the officer did not look for it. *See id.* at ¶ 3-5. Finally, in *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234 (6th Dist.), the state highway patrol officer partially erased the videotape of the defendant's arrest despite policy regulations requiring that all traffic stops, pursuits, and crash scenes be recorded on videotape and preserved as evidence until all criminal and civil actions have been completed. *See id.* at ¶ 32-33.

{¶43} In sum, Mr. Lusane did not meet his burden to establish that his due process rights were violated. Therefore, the trial court did not err in denying his motion to dismiss.

{¶44} Mr. Lusane's first assignment of error is without merit.

### Sufficiency of the Evidence

{¶45} We consider Mr. Lusane's second and third assignments of error out of order for ease of discussion.

{¶46} In his third assignment of error, Mr. Lusane contends that the trial court erred in finding him guilty beyond a reasonable doubt. We construe Mr. Lusane's third assignment of error as challenging the sufficiency of the evidence to support his conviction for failure to yield.

{¶47} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether * * * the evidence is legally sufficient to support the * * * verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997),

Case No. 2022-P-0011

quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.*

**{¶48}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶49}** Mr. Lusane was convicted of violating KCO 331.22, which provides, in relevant part:

**{¶50}** "(a) Subject to compliance with any traffic control device, the operator of a vehicle about to enter or cross a highway from an alley or from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed.

**{¶51}** "(b) Except as otherwise provided in this subsection, whoever violates this section is guilty of a minor misdemeanor." *See also* R.C. 4511.44.

**{¶52}** KCO 301.32(a) defines "right of way" as "[t]he right of a vehicle or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle or pedestrian approaching from a different direction into its or the individual's path[.]" *See also* R.C. 4511.01(UU)(1).

13

Case No. 2022-P-0011

**{¶53}** Accordingly, a driver with the right of way has an absolute right to proceed uninterruptedly in a lawful manner, and other drivers must yield to him. *In re Neill*, 160 Ohio App.3d 439, 2005-Ohio-1696, 827 N.E.2d 811, ¶ 10 (3d Dist.). A driver proceeds in a lawful manner by complying with Ohio traffic laws. *Id.* Evidence that the progress of the preferred vehicle was impeded or impaired is sufficient to establish a failure to yield the right of way. *State v. Williams*, 10th Dist. Franklin No. 81AP-109, 1981 WL 3206, *2 (May 21, 1981).

**{¶54}** Mr. Lusane suggests that Ofc. Womack's testimony, by itself, was insufficient to establish the facts underlying the collision. However, the term "evidence" encompasses "every form of evidence," including "testimony as well as documentary evidence, exhibits, * * * and every other thing which may properly give information to the court upon the issues presented." *Scherck v. Knapp*, 14 Ohio C.D. 588, 589 (1903); *see Black's Law Dictionary*, evidence (11th Ed.2019) (defining "evidence" as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact; anything presented to the senses and offered to prove the existence or nonexistence of a fact"). Thus, Ofc. Womack's testimony constituted "evidence" that, if believed, could properly serve as the basis for the trial court's verdict.

**{¶55}** Mr. Lusane also contends that Ofc. Womack was negligent, or at least contributorily negligent, in his attempts to avoid the collision after his right of way was breached. Mr. Lusane does not articulate how Ofc. Womack's alleged negligence precluded his conviction for failure to yield. However, it appears Mr. Lusane is mistakenly relying on cases involving civil actions for damages.

14

{¶56} For instance, Mr. Lusane cites *Deming v. Osinski*, 24 Ohio St.2d 179, 265 N.E.2d 554 (1970), a civil action for negligence, where the Supreme Court of Ohio stated:

{¶57} "'The driver of a vehicle lawfully approaching from the right has the right to assume that the driver of the vehicle approaching from the left will obey the law by yielding the right of way. *If however the former, just as he is approaching or entering the intersection, discovers that the latter is not yielding the right of way and has thereby placed himself in a perilous situation, it becomes the duty of the former to use ordinary care not to injure the latter after becoming aware of his perilous situation.*'" (Emphasis added). *Id.* at 182, quoting *Morris v. Bloomgren*, 127 Ohio St. 147, 187 N.E. 2 (1933).

{¶58} Mr. Lusane cites no authority indicating that the necessary elements of a failure to yield offense include the preferred driver's lack of negligence during a "perilous situation." Accordingly, Mr. Lusane has not established that there was insufficient evidence to support his conviction.

{¶59} Mr. Lusane's third assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶60} Finally, in his second assignment of error, Mr. Lusane contends that his conviction for failure to yield is against the manifest weight of the evidence.

{¶61} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and

15

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶62} "'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'" *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶63} Mr. Lusane challenges the credibility of Ofc. Womack's and Lt. Gaydosh's trial testimony. However, this court is not in a position to view the witnesses who testified below, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *State v. Thompson*, 2016-Ohio-7154, 71 N.E.3d 1219, ¶ 7 (11th Dist.). Thus, in weighing the evidence submitted at a criminal trial, we must give substantial deference to the factfinder's determinations of credibility. *Id.* The trier of facts is free to believe all, part, or none of the testimony of each witness appearing before it. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 19.

{¶64} Despite Mr. Lusane's efforts on cross-examination, the trial court chose to believe the officers' testimony. Upon review of the record, we cannot say that the trial court clearly lost its way or created a manifest miscarriage of justice. Accordingly, Mr. Lusane's conviction for failure to yield is not against the manifest weight of the evidence.

16

{¶65} Mr. Lusane's second assignment of error is without merit.

{¶66} For the foregoing reasons, the judgment of the Portage County Municipal Court, Kent Division, is affirmed.


THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2022-P-0011